1   GABROY LAW OFFICES
    Christian Gabroy (#8805)
2   The District at Green Valley Ranch
    170 South Green Valley Parkway, Suite 280
3   Henderson, Nevada 89012
    Tel    (702) 259-7777
4   Fax    (702) 259-7704
    Christian@gabroy.com
5   *Attorney for Plaintiff*

6               **UNITED STATES DISTRICT COURT**

7                   **DISTRICT OF NEVADA**

8

9   MARIA LIENAU, an individual;

10              Plaintiff,                          Case No.: 2:16-cv-01818-RFB-NJK
    vs.

11  NEVADA GAMING PARTNERS, LLC, a
    domestic    limited-liability    company;     **PLAINTIFF'S RESPONSE**
12  NEVADA    GAMING    PARTNERS               **IN OPPOSITION TO DEFENDANTS'**
    MANAGEMENT,   LLC,   a   domestic          **MOTION TO DISMISS**
13  limited-liability   company;   NEVADA
    GAMING  PARTNERS  MANAGEMENT
14  II,  LLC,  a  domestic  limited-liability
    company;    MANAGED    BUSINESS
15  SERVICES,    INC.,    a    domestic
    corporation;  EMPLOYEE(S)/AGENT(S)
16  DOES      1-10;      and      ROE
    CORPORATIONS 11-20, inclusive,
17
                Defendants.
18

19          COMES NOW Plaintiff Maria Lienau ("Plaintiff" or "Lienau"), by and through, Christian

20  Gabroy, Esq., of Gabroy Law Offices, and hereby submits her Response to Defendants Nevada

21  Gaming Partners, LLC, Nevada Gaming Partners Management, LLC, Nevada Gaming Partners

22  Management II, LLC, and Managed Business Services, Inc.'s (collectively, "Defendants") Motion to

23  Dismiss per 12(b)(6). Plaintiff's Response is made and based upon the Memorandum of Points and

24  Authorities, other papers and pleadings in this action, and any oral argument this Honorable Court

25  may entertain.

26          **MEMORANDUM OF POINTS AND AUTHORITIES**

27  **I.     INTRODUCTION**

28          Under the high threshold of FRCP 12(b)(6), this Court must accept Plaintiff's charges as

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

true, Plaintiff's allegations must be construed in favor of Plaintiff, and this Court may dismiss the claims only where it appears beyond doubt that Plaintiff could prove no set of facts entitling her to relief. Defendants' Motion to Dismiss is not based upon the following sound facts alleged in Plaintiff's Complaint.  Summarily, it must fail.

## II.   RELEVANT FACTUAL ALLEGATIONS

On or about December 21, 2010, Plaintiff began employment with Nevada Gaming Partners, LLC as a slot attended at its Cardenas Market location, and within a few months, Plaintiff's supervisor, Ron Pajak ("Pajak"), began to make inappropriate comments to Plaintiff. Complaint ¶¶ 14, 16, ECF No. 1-1.  Pajak repeatedly told Plaintif that he was attracted to her and that he wanted to take her out on a date.  *Id*. at ¶ 18.  Pajak also sent Plaintiff a barrage of harassing text messages.  *Id*. at ¶ 22.  Even though Plaintiff was not receptive to Plaintiff's advances, Pajak's conduct continued undeterred, and escalated.  *Id*. at ¶¶ 19, 21.  On more than one occasion, Pajak told Plaintiff that she would receive a raise if she agreed to go out with him.  *Id*. at ¶ 25.  Pajak also repeatedly told Plaintiff's coworker that she too would receive a raise if she was able to persuade Plaintiff to go out with him.  *Id.* at ¶ 26.  Pajak's harassment against Plaintiff extended beyond work hours, as he often called her on the telephone at night, sounding inebriated.  *Id.* at ¶ 29.

Pajak's pervasive harassment took its toll on Plaintiff's emotional well-being, and eventually, after being unable to tolerate the harassment anymore, Plaintiff decided to try to put a stop to it, even if it meant the possibility of losing her job.  *Id.* at ¶¶ 32, 33.  Accordingly, Plaintiff informed Pajak that she would never be receptive to Pajak's advances, and in or around April or May, 2014, Plaintiff complained about Pajak's conduct to the owners of Nevada Gaming Partners, Bruce Familian ("Familian") and John Attey ("Attey").  *Id.* at ¶¶ 34, 35.  Both Familian and Attey told Plaintiff that they would address the situation, but they never took action with respect to Plaintiff's complaints.  *Id.* at ¶ 36.  As a result of Plaintiff's complaints of harassment, and her express refusal to be romantically involved with Pajak, Pajak intentionally endeavored to make Plaintiff's work environment unpleasant with the assistance of Plaintiff's coworkers, Ms. Silvia Gastelum ("Gastelum") and Ms. Myra Pena ("Pena").  *Id.* at ¶ 39.  In or around May 2014, Pajak informed Plaintiff that he had granted Pena's request to be transferred to the store where Plaintiff

GABROY LAW OFFICES

170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

worked.  *Id.* at ¶ 39.  Plaintiff asked Pajak if he knew the reason for Pena's transfer request.  *Id.*  Pajak stated that Pena requested to be transferred to Plaintiff's store for the sole purpose of making Plaintiff's life miserable.  *Id.*  Pajak stated that he granted the request even after learning of Pena's motives.  *Id.*  Gastelum and Pena were deliberately rude to Plaintiff and lobbed several false accusations at Plaintiff regarding mistakes, missing money, etc, but, unsurprisingly, Gastelum and Pena were never able to substantiate any of their allegations.  *Id.* at ¶ 41.  As a result of Pajak's continuing harassment, the imminent charges to the terms of her employment, discrimination, and retaliation, and Familian's and Attey's failure to correct these problems, Plaintiff was forced to resign from her position on May 16, 2014.  *Id.* at ¶ 43.

Throughout Plaintiff's employment, Plaintiff was regularly asked to perform work-related tasks and errands when she was off the clock.  *Id.* at ¶ 45.  Defendants told Plaintiff that she would be paid overtime for performing such tasks and errands.  *Id.*  However, Plaintiff never received any wages for such work.  *Id.* at ¶ 48.  On most work weeks, Plaintiff worked 40 hours or close to 40 hours as part of her regularly scheduled shift.  *Id.* at ¶ 46.  During most work weeks, Plaintiff spent about five hours performing work off the clock.  *Id.* at ¶ 47.  Accordingly, Plaintiff routinely worked in excess of forty hours per week and in excess of eight hours per day, but Defendants did not provide Plaintiff overtime compensation for such work.  *Id.* at ¶ 48.  For example, Defendants failed to pay Plaintiff overtime wages for the work of June 3, 2013 to June 9, 2013, during which Plaintiff worked in excess of forty hours.  *Id.*

## III.   ARGUMENT

### A.   Legal Standard.

A plaintiff need only plead "a short plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. Pro. 8(a)(2). Complaints in employment discrimination actions need only satisfy the simple notice pleading requirements of the Federal Rules of Civil Procedure and are not subject to a heightened pleading standard.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14, 122 S.Ct. 992, 998-99 (2002).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007).  A pleading need only contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that the allegations in the complaint are true.  *Id.* Further, in reviewing the sufficiency of a complaint in the context of a motion to dismiss, the Court must treat all well-pleaded allegations as true.  *Papasan v. Allain,* 478 U.S. 265, 283, 106 S. Ct. 2932, 2944 (1986).  Rule 12(b)(6) does not countenance dismissals based on a judge's belief of a complaint's factual allegations.  *Twombly*, 550 U.S. at 556.  A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Id.*

A Rule 12(b)(6) dismissal is proper only where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990).  Factual allegations need only be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 544.

Plaintiff meets this standard as she has set forth sufficient facts to establish all necessary elements for her claims.   Accordingly, Plaintiff humbly requests that this Court not dismiss Plaintiff's claims

**B.     Plaintiff Satisfied the Prerequisites for Bringing a Claim for Retaliation.**

Defendants maintain that Plaintiff's retaliation claim should be dismissed because she did not check the "Retaliation" box on her Equal Employment Opportunity Commission ("EEOC") Charge and an investigation by the EEOC would not have led to an investigation of retaliation. Defendants' Motion to Dismiss, p. 5, line 17, ECF No. 9.  Plaintiff disagrees.

Title VII requires that an employee exhaust her administrative remedies with the EEOC before filing a complaint in federal court, but a federal court can hear complaints that are "like or reasonably related to the allegations of the EEOC charge."  *Stache v. International Union of Bricklayers & Allied Craftsmen,* 852 F.2d 1231, 1234 (9th Cir. Cal. 1988) (internal citations

omitted).  To determine whether a claim is like or reasonably related to a claim included in the EEOC charge, the court "inquires whether the original EEOC investigation would have encompassed the additional charges."  *Green v. L.A. Cnty. Superintendent of Sch.,* 883 F.2d 1472, 1476 (9th Cir.1989).  Furthermore, the Ninth Circuit has instructed that the remedial purpose of Title VII requires that administrative charges filed before the EEOC be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading."  *See id.*; *see also B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1100 (9th Cir.2002).

To establish a prima facie case of retaliation, the plaintiff must show that: (1) the plaintiff engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between these two events.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  Protesting the actions of a supervisor for his alleged violation of Title VII is a protected activity, as is making such informal complaints to a supervisor.  *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Additionally, constructive discharge is an adverse employment action for purposes of establishing a Title VII retaliation claim.  *See Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).  As to causation, a plaintiff is only required to show by a preponderance of evidence that engaging in the protected activity was but one of the reasons for the adverse employment action.  *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir. 1982).  Causation can be inferred when the adverse employment action is taken within a reasonable period of time after complaints of discrimination have been made.  *Passantino v. Johnson & Johnson Consumer Products, Inc*., 212 F.3d 493, 506 (9th Cir. 2000).

Here, an EEOC investigation would have led to an investigation of retaliation because the elements of retaliation are entangled in Plaintiff's EEOC charge, thus allowing Plaintiff to bring her retaliation claim.  For instance, Plaintiff's EEOC charge contains the following relevant allegations:

> 1)  Throughout my entire tenure of employment, I was subjected to verbal sexual harassment by Ron Pajak, Supervisor.  Although I repeatedly asked him to stop, he continued to engage in this behavior.
> 2)  In April or May 2014, I complained to John Attey, Owner,

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

about Mr. Pajak's conduct.

3)   I was constructively discharged from my position due to Respondent's lack of action to address my complaint and Mr. Pajak's conduct.  Complaint, Exhibit II, ECF No. 1-1.

In regards to engaging in a protected activity under Title VII, Plaintiff's EEOC charge indicates that she engaged in a protected activity because she complained to Attey about Pajak's verbal and sexual harassment.  *Id*.  Although not in her EEOC charge, Pajak also engaged in a protected activity when she complained to Pajak about his harassment.  Next, Plaintiff's EEOC charge includes an adverse employment action because Plaintiff was constructively discharged.  *Id*.  The only remaining requirement of a retaliation claim is a causal link between engaging in a protected activity and the adverse employment action.  In her EEOC charge, Plaintiff alleges that "I repeatedly asked [Pajak] to stop [the harassment, but] he continued to engage in his behavior."  *Id*.  She continues, "I was constructively discharged from my position due to . . . Mr. Pajak's conduct."  *Id*.  Taking Plaintiff's charge at face value, a simple EEOC investigation to determine whether Pajak's harassment escalated after Plaintiff complained of harassment and thus caused Plaintiff's constructive discharge could have essentially established a retaliation claim.  As a result, an EEOC investigation absolutely would have encompassed a retaliation claim.  Because a retaliation claim is reasonably related to Plaintiff's allegations in her EEOC charge to warrant further investigation, and because an EEOC charge must be construed with utmost liberality, Plaintiff was not required to have filed a charge specifically alleging retaliation; thus, she should be able to proceed with her retaliation claim.

C.   **Plaintiff's Claims Should Not Be Dismissed Against All Defendants Other Than Nevada Gaming Partners.**

Plaintiff was not required to name Nevada Gaming Partners Management, LLC ("NGPM"), Nevada Gaming Partners Management II, LLC ("NGPM II"), and Managed Business Service, Inc. ("Managed Business") in her EEOC charge because these Defendants had more than adequate notice they may be named in a subsequent suit.

In *Sosa v. Hiraoka*, 920 F.2d 145 (9th Cir. 1990), the Ninth Circuit acknowledged a number of legal theories by which to hold entities liable under Title VII even when they were not

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX:  (702) 259-7704

named in the EEOC charge.  In relevant part, the *Sosa* Court recognized that entities not named in the EEOC charge can be held liable in the following circumstances: (1) "where the EEOC or defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit"; (2) the respondent named in the EEOC and the unnamed party are "substantially identical parties"; or (3) the "EEOC could have inferred that the unnamed party violated Title VII. *Id.* at 1458–59.  Further, the remedial purpose of Title VII requires that administrative charges filed before the EEOC be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B.*, 276 F.3d at 1100.

Here, Plaintiff's failure to name NGPM, NGPM II, and Managed Business is not dispositive because these defendants should have anticipated that they would have been named as defendants.  For instance, according to the Nevada Secretary of State website, Nevada Gaming Partners, LLC ("NGP), the respondent named in the EEOC charge, NGPM, and NGPM II have essentially identical names, are owned by Familian, and are located at the same address.  *See* Exhibit I.  Further, the EEOC charge includes NGP's address, so it can be surmised that NGPM and NGPM II received correspondence from the EEOC regarding this matter and thus could reasonably anticipate later being named as defendants.  Complaint, Exhibit II, ECF No. 1-1.  In regards to Managed Business, Managed Business should have easily anticipated that it would be named as a Defendant because it is listed as Plaintiff's employer on Plaintiff's W-2 Wage and Tax Statement and printed on Plaintiff's paystub, directly above NGP, in a larger font than NGP.[1]  *See* Exhibit 2; Complaint, Exhibit I, ECF No. 1-1.  Additionally, because all named defendants are substantially identical or at the very least closely related, the EEOC could have inferred that the unnamed parties potentially violated Title VII as well.  For the foregoing, Plaintiff's claims against NGPM, NGPM II, and Managed Business should not be dismissed. Furthermore, whether Plaintiff can bring forth a claim against NGPM and NGPM II does not hinge on whether Defendants were in existence at the time of injury, but rather it depends on whether NGPM and NGPM II are

---

[1]  Plaintiff understands that extrinsic exhibits are typically not considered in a motion to dismiss stage of litigation.  However, Plaintiff maintains that her W-2 Form and Tax Statement is essential to the Complaint and to the opposition of Defendants' argument that Managed Business Services, Inc. is not Plaintiff's employer, as Plaintiff's W-2 Form and Tax Statement clearly shows that Managed Business Services, Inc. is in fact Plaintiff's employer.

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

considered Plaintiff's "employers."

Under Title VII, "[i]t shall be an unlawful employment practice for an *employer* to discriminate against any of his employees." 42 U.S.C. § 2000e-3. Courts have fashioned several tests where a defendant who does not directly employ the plaintiff may still be the plaintiff's employer. One such test is the "integrated-employer test," which involves four elements: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degrees of common ownership/financial control." *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 602 (D. Md. 2014). All four criteria need not be present. *Id.*

In regards to the first element, common management element, courts look at whether the separate entities share a common manager. *Gilbert*, 32 F. Supp. 3d at 594, 602 (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443 (4th Cir. 1999)). In deciding the second element, interrelation between operations, courts look to whether "there is evidence of a common manager who runs day-to-day operations and through employee transfers between locations." *Id.* The third element, control of labor operations, is established "when a single party controls employment decisions across multiple corporations." *Id.* The fourth element–common ownership—is established "when one individual owns and has financial control over the different enterprises." *Id.* Importantly, it is not appropriate to apply this test at the motion to dismiss stage, before discovery, because deciding whether separate entities can be joined is fact-intensive. *Id.*

Here, NGP, NGPM, and NGPM II should be considered as a single employer because NGP, NGPM, and NGPM II are managed and owned by the same person, Familian, thus establishing three of the four elements of the integrated-employer test, common management, control of labor operations, and common ownership. *See* Exhibit 1. In regards to the final element, discovery could lead to establishing "interrelation between operations" because all three entities are located at the same address. *Id.* As a result, NGP, NGPM, and NGPM II should be considered a single employer under Title VII and Plaintiff's claims against them should not fail.

As for Plaintiff's FLSA claims, the FLSA employs a slightly different test than Title VII to determine whether separate entities constitute a single employer. For two separate entities to constitute a single employer under the FLSA, the entities must conduct: (1) related activities (2)

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

1    under common control and (3) for a common business purpose.  *Chao v. A-One Med. Servs., Inc.,*

2    346 F.3d 908, 914–16 (9th Cir. 2003); *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594.

3            Here, in regards to elements one and three, "related activities" and "common business

4    purpose," respectively, NGP, NGPM, and NGPM II have essentially identical names, are located

5    at the same location, and all entities are owned and managed by Familian, which demonstrate that

6    all three entities are extensions of one another, and thus conduct related activities for a common

7    business purpose.  *Id*.  As for the second element, all entities are under "common control" because

8    all are managed and owned by Familian.  *Id*.  As a result, NGP, NGPM, and NGPM II satisfy the

9    elements of a single employer under the FLSA.  Therefore, Plaintiff should be permitted to

10   proceed with her claims, especially because we are at the preliminary stages of litigation, as

11   discovery will shine more light on these fact-intensive issues.  As Plaintiff has made her

12   allegations, this issue is more appropriate in summary judgment.

13           Additionally, Defendants' assertion that Plaintiff failed to differentiate her pleadings as to

14   the particular conduct of Managed Business is specious and ineffective.  Defendants' Motion to

15   Dismiss, p. 9, ECF No. 9.  Plaintiff's Complaint more than satisfies the pleading standards

16   required by the Federal Rules of Civil Procedure.  A plaintiff need only set forth a short and plain

17   statement of the claim to put the defendant on sufficient notice and to enable the defendant to

18   defend itself effectively.  F.R.C.P 8(a)(2); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

19   Where a complaint satisfies this standard, an assertion of "undifferentiated pleading" is defeated.

20   *Parker v. Dean Transp. Inc.*, 2013 WL 7083269, at *13 (C.D. Cal. Oct. 15, 2013) (pleading is

21   sufficient to put Defendants on notice as to the allegations against them).

22           Here, Plaintiff's Complaint provides more than adequate notice to Managed Business of

23   Plaintiff's claims and the grounds upon which they rest.  *See* Complaint, *generally*, ECF No. 1-1.

24   For instance, Plaintiff's Complaint describes Managed Business as "Plaintiff's employer."

25   Complaint ¶ 9, ECF No. 1-1.  Obviously, Managed Business is Plaintiff's employer because

26   Managed Business is listed as Plaintiff's Employer on her W-2 Wage and Tax Statement and

27   located on Plaintiff's paystub directly above NGP in all capital letters in a larger font than NGP,

28   appearing as though NGP is Managed Business' subsidiary.  *See* Exhibit 2; Complaint, Exhibit I,

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

ECF N. 1-1.  Moreover, within every cause of action, Plaintiff implicates her employer.  For example, in Paragraph 80 of Plaintiff's Complaint, Plaintiff alleges "[a]t all material times hereto, Plaintiff was employed by Defendants as an 'employee.'"  Plaintiff continues in Paragraph 81, "Plaintiff performed a variety of job duties, labor services, and responsibilities for Defendants . . . that are subject to . . . the FLSA."  Language and allegations such as these are scattered throughout Plaintiff's Complaint.  *See* Complaint, *generally*, ECF No. 1-1.  As a result, Managed Business must have been on adequate notice.

Furthermore, Defendants' rely on persuasive authority that is easily distinguishable.  *See* Defendants' Motion to Dismiss, p. 9, ECF No. 9.  *Carazon v. Aurora Loan Services, LLC*, 2011 WL 1740099 (N.D. Cal. May 5, 2011) involves collective pleadings against 50 Doe defendants in addition to only one other defendant, an LLC.  In *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003), the court found that the complaint "lumps together 'thirteen defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint."  *Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) involves thirteen undifferentiated defendants.  And, *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540 (D. Colo. 1990) involve distinct defendants that include attorneys, creditor, and the wife's employer.  None of the above is the case here.

Unlike in the cases, Defendants in our case are closely related and are not as numerous, and thus should have been on adequate notice as to the allegations against them.  For instance, no case that Defendants rely on, other than *Weizmann*, involves less than thirteen defendants.  Our case involves only four corporate defendants.  Moreover, all four corporate defendants are closely related.  For instance, the names NGP, NGPM, and NGPM II are nearly identical, and the entities are located at the same address and managed by the same person, Familian.  Exhibit I.  Moreover, Managed Business is closely related because it is listed as Plaintiff's Employer on her W-2 Wage and Tax Statement and printed on Plaintiff's paystub, directly above NGP.  Exhibit II; Complaint, Exhibit I, ECF No. 1-1.  As a result, NGPM, NGPM II, and Managed Services cannot plausibly state that they lack fair notice of the actions against it.  Therefore, Defendants' unidentified pleadings argument must fail.

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

**D.      Plaintiff Agrees that Plaintiff's FLSA Claims Should Be Limited to the Three-Year Statutory Period, but Plaintiff's State Law Claims Should Not Be Limited to a Two-Year Statutory Period.**

Plaintiff agrees that FLSA claims should be limited to the three-year statutory period. However, Plaintiff's claims under state law should not be limited to a two-year statutory period, as Defendants incorrectly rely on NRS 608.260 in their assessment.  *Id.*  Plaintiff's state law claims are subject to a four-year period for the Constitutional claim, and the three year Nevada statutory statute of limitations, four our NRS 608 claims, in NRS 11.1903(a)(3 years when liability is created by statute).

As four Plaintiff's constitutional claim, Plaintiff is entitled to a 4 year statute of limitations. In the event no specific statute of limitations is otherwise provided for a particular claim, Nevada provides for a four year statute of limitations.  *See*, NRS 11.220.  Neither Nevada's statutes nor its constitution set forth any expressly specified statute of limitations for civil claims arising under Nevada's Constitution.  In *White Pine Lumber Co. v. City of Reno*, 801 P.2d 1370, 1371-72 (Nev. Sup. Ct. 1990), the Court held that a claim under the Nevada Constitution against a municipality for inverse condemnation would have, absent other considerations, been subject to the four year "catch all" statute of limitations provided for in NRS 11.220.  It found other considerations compelled it to apply the 15 year statute of limitations for inverse condemnation, as constitutional claims against governmental actors should not be subject to a statute of limitations shorter than that applicable to private parties (the adverse possession limitations period of NRS 40.090) who commit the same conduct.  801 P.2d at 1371.   In the earlier case of *Alper v. Clark County*, 571 P.2d 810, 813 (1977), the Nevada Supreme Court recited, without dispute, the logic of applying the four year NRS 11.220 statute of limitations to claims generally arising under Nevada's Constitution, although it decided *Alper* on other grounds.

Here, Plaintiff's wage claims do not fall under NRS 608.260.  To the contrary, Plaintiff alleges failure to pay wages/minimum wage under the Nevada Constitution (4 years) and NRS 608 (3 years).  Complaint, ¶¶ 103-109, ECF No. 1-1.

**E.      Plaintiff's Conversion Claim Does Not Fail.**

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777   FAX: (702) 259-7704

1    Defendants argue that conversion should fail essentially because other jurisdictions

2    including California have rejected or would reject conversion claims based on failure to pay

3    wages.  Defendants' Motion to Dismiss, p. 10, ECF No. 9.  The Nevada Supreme Court has never

4    addressed whether failure to pay wages could support conversion, and California case law actually

5    supports conversion based on wage claims.

6    Conversion is a "distinct act of dominion wrongfully exerted over another's personal

7    property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or

8    defiance of such title or rights." *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958).

9    Here, Plaintiff alleges that Defendants were Plaintiff's employer, and that they had control

10   over her employment, labor, and employment matters.   Complaint ¶¶ 5-10, ECF No. 1-1.

11   Therefore, Plaintiff has alleged that Defendants were responsible for paying Plaintiff's wages, and

12   Defendants had control over those wages.  Plaintiff had the right to receive her entire paycheck,

13   and Defendants kept such wages as their own, wrongfully exerting their dominion over such

14   monies, for their own personal benefit.  Therefore, Plaintiff has alleged enough facts to show a

15   conversion claim against Defendants.

16   Defendants point to *In re Wal-Mart Wage & Hour Employment Practices Litig*., 490 F.

17   Supp. 2d 1091, 1102 (D. Nev. 2007) in their argument against Plaintiff's conversion claim.

18   Defendants' Motion to Dismiss, p. 10, line 23, ECF No. 9.  However, District Judge Pro did not

19   rule that Nevada does not, or would not, recognize a conversion claim based on wages, but rather

20   Judge Pro only ruled that, under their respective laws, Delaware, Utah, Montana, Alaska, Hawaii,

21   Maine, Wyoming, and Nebraska would not recognize a conversion claim based on wages.  Further,

22   Defendants support their claim that conversion is adequately addressed by statute by citing *Green*

23   *v. Party City Corp.*, 2002 WL 553219, at *5 (C.D. Cal . Apr. 9, 2002).  *Party City* held that "the

24   statutory remedies for unpaid overtime wages bars plaintiff's claim for conversion."  However, a

25   California District Court in a more recent decision in *Sims v. AT & T Mobility Servs*. LLC, 955 F.

26   Supp. 2d 1110 (E.D. Cal. 2013) declined to follow *Party City* and held that "[in its analysis, *Park*

27   *City* did] not acknowledge the availability of actions to recover wages at common law, skipping

28   the first step of the 'new right-exclusive remedy' analysis."  In essence, "a right must be purely a

purely statutory creation before a statutory remedy is considered exclusive." *Id.* Ultimately, the court in *Sims* held that:

> [T]here is clear authority under California law that employees have a vested property interest in the wages that they earn, failure to pay them is a legal wrong that interferes with the employee's title in the wages, and an action for conversion can therefore be brought to recover unpaid wages . . . [and] if the issue were presented to the California Supreme Court, it would approve a conversion action for unpaid wages. *Id.* at 1117.

Further, Defendants' argument against Plaintiff's conversion claim is that Plaintiff did not state a "specific sum capable of identification." Defendants' Motion to Dismiss, p. 10, lines 19-20, ECF No. 9. However, while Plaintiff agrees that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved, "it is not necessary that each coin or bill be earmarked." *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599, 124 Cal. Rptr. 297, 303 (Ct. App. 1975).

Here, Plaintiff's Complaint alleges that she worked in excess or forty hours per week and provides an example of Defendant failing to Plaintiff overtime wages for the work week of June 3, 2013 to June 9, 2013. Complaint ¶ 48, ECF No. 1-1. The amount of wages owed is subject to simply math and is capable of identification. Therefore, Defendants' argument against conversion should fail.

**F.    Plaintiff's Claim for Negligent Hiring, Training, and Supervision Does Not Fail as a Matter of Law.**

**1.    Plaintiff Alleges Facts Sufficient to Support a Negligent Hiring, Training, and Supervision Claim.**

Generally, to state a negligent hiring, training, and supervision claim, a claimant must show (1) a general duty on the employer to use reasonable care in the hiring, training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation. *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013). Such claims are based upon the premise that an employer will be held liable when it places an employee who it knows or should have known behaves wrongfully in a position in which that employee can harm another. *Id.* To that end, courts consider whether antecedent circumstances would "give[ ] the employer reason to believe that the person, by reason of some attribute of character or prior

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities." *Hall v. SSF, Inc.,* 112 Nev. 1384, 1392, 930 P.2d 94, 99 (1996).

Here, Plaintiff's Complaint alleges facts sufficient to show a plausible claim for negligent hiring, training, and supervision.   For instance, Plaintiff's Complaint contains the following relevant allegations:

> 35.  In or around April or May 2014, Plaintiff complained about Pajak's conduct to the owners of Nevada Gaming Partners, Bruce Familian ("Familian") and John Attey ("Attey").
> 36.  Both Familian and Attey told Plaintiff that they would address the situation, but they did not take any action with respect to Plaintiff's complaints.
> 39.  As a result of Plaintiff's complaints, and her express refusal to be romantically involved with Pajek, Pajek intentionally endeavored to make Plaintiff's work environment unpleasant with the assistance of Plaintiff's coworkers, Ms. Silvia Gastelum ("Gastelum"), and Ms. Myra Pena ("Pena")
> 115.  [Defendants had a duty] to adequately train and supervise their employees in regards to all correct policies and procedures in regards to harassment, discrimination, and retaliation.
> 116.  In violation of that duty, Defendants damaged Plaintiff by failing to supervise, train, and hire appropriate personnel which resulted in damages such as severe emotional distress, including but not limited to, great mental and emotional harm, anguish, insecurity, damage to self-esteem and self-worth, shame and humiliation, lack of appetite, loss of sleep and/or anxiety. Complaint ¶¶ 35, 36, 115, 116, ECF No. 1-1.

Taking Plaintiff's allegations as true, Defendants knew or should have known that Pajak could potentially harm Plaintiff because Plaintiff complained about Pajak's conduct to Familian and Attey, owners of Nevada Gaming Partners.   As a result, it is more than plausible that Defendants had reason to believe that Pajak created an undue risk of harm to Plaintiff.   Even though Defendants should or should have known of this risk, Defendants negligently failed to correct this problem; and as a direct and proximate result of this failure, Plaintiff suffered the damages alleged in her Complaint.   Because Plaintiff alleged sufficient facts to show that Defendants' should have known an employee might violate Plaintiff's rights, the Court should not dismiss Plaintiff's claim for negligent hiring, training, and supervision.

**2.     Plaintiff Need Not Allege Any Physical Harm.**

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

Defendants argue that Plaintiff's negligent hiring, training, and supervision claim fails for not involving physical injuries or threatened physical harm.  Defendants' Motion to Dismiss, p. 13, ECF No. 1-1.  Defendants  inaccurate cite the required elements.

Judge Hicks found that "[t]he Nevada Supreme Court has not yet addressed the physical harm requirement, and '[i]n the absence of conclusive authority, the court will not graft a physical injury requirement onto the tort of' negligent supervision."  *Hoffman v. Red Wing Brands of Am., Inc.*, No. 3:13-CV-0633-LRH-VPC, 2015 WL 3903627, at \*11 (D. Nev. June 24, 2015); *Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 n. 4 (D. Nev. 2013).  Notably, the majority approach (including California law, which is especially persuasive authority in Nevada) does not require physical harm.  *See* Nesheba M. Kittling, *Negligent Hiring and Negligent Retention: A State—by—State Analysis, ABA 4th Annual Section of Labor and Employment Law Conference* (Nov. 6, 2010), available at http://abalel.omnibooksonline.com/2010/data/papers/087.pdf.

Additionally, Defendants fail to acknowledge the recent case of *Richardson v. HRHH Gaming Senior Mezz, LLC*, 99 F. Supp. 3d 1267 (D. Nev. 2015).  In *Richardson*, an employee alleged *inter alia* discrimination, harassment, and negligent hiring, training, and supervision.  *Id*. The *Richardson* court refused to dismiss the discrimination claim for not alleging physical harm or threatened physical harm.  *Id*.  The court noted how "numerous courts in this district have previously held that NHTS claims may arise out of workplace discrimination and do not require an allegation that a plaintiff suffered physical harm." *Id*. at 1278–79 (D. Nev. 2015).

The Nevada Federal Court has found that a cause of action for negligent supervision can be maintained in instances of retaliatory conduct in the workplace and absent physical harm. *Morsovillo v. Clark Cnty.,* 207-CV-01011-LRH-RJJ, 2009 WL 3785266 (D. Nev. Nov. 12, 2009). In *Morsovillo*, a State Court bailiff alleged *inter alia*, discrimination and negligent training.  *Id*. The *Morsovillo* court refused to grant summary judgment to the defendant because it found issues of fact remained regarding whether the defendant engaged in retaliatory conduct.  *Id*.  This holding does not address physical harm directly as there was no physical harm to the *Morsovillo* plaintiff. *Id*. Rather, the entirety of her claims relied on discriminatory acts of the defendant and a failure to train regarding discrimination and anti-retaliation laws.  *Id*.

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

Upon review, there is an abundance of notable jurisdictional evidence that provides many jurisdictions do not require "physical" injury to the tortious claim of negligent hiring, supervision, and training.  *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp 2d 61, 80-81 (D.D.C. 2005) (noting that jurisdictions are split on whether negligent hiring and supervision requires physical harm and predicting it does not in D.C.); *Verhelst v. Michael D's Restaurant San Antonio, Inc.*, 154 F. Supp. 2d 959, 968 (W.D. Tex. 2001) ("A cause of action for negligent supervision and training requires that the employee in question commit an actionable tort, causing a 'legally compensable injury' – not necessarily a physical injury."); *See also Kiesau v. Bantz*, 686 N.W. 2d 164, 172 (Iowa 2004); *Grego v. Meijer Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001); *Van Horne v. Muller*, 294 Ill. App. 3d 649, 229 Ill. Dec. 138, 691 N.E. 2d 74, 80 (Ill. App. Ct. 1998); *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1223 (W.D. Tenn. 1993); *Mendes v. Jednak*, 92 F. Supp. 2d 58, 63 (D. Conn. 2000).

Furthermore, there is no logical reason to separate negligent hiring, training, and supervision from any other type of negligence.  Under Nevada law, a plaintiff may recover in tort, "for all of the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity and disgrace to the person." *See State University v. Sutton*, 103 P.3d 8 (Nev. 2004).  Indeed, practically and from a policy standpoint, there is no reasonable purpose in requiring physical harm for a negligent hiring, training, and supervision claim when none is required for other negligence claims.

Therefore, contrary to Defendants' assertions, there is no requirement for physical harm in order for Plaintiff's negligent hiring, training, and supervision claim to proceed.  Defendants' Motion toward this claim must fail.

### a.    The Economic Loss Doctrine Does Not Apply.

A thorough analysis of the history and application of the economic loss doctrine by Judge William Fletcher in *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) discusses the difficulty in determining when to apply the economic loss doctrine.  The court acknowledged that the application of the rule has been diluted by many courts that state in overly broad terms that purely economic losses may not be recovered in tort.  *Id.* at 874.

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

The court explains that the economic loss doctrine was born out of strict products liability intended to maintain a limitation of a manufacturer's liability. *Id.* at 873. The applicability of this doctrine to general tort claims is not an accurate understanding of the law. *Id.* at 875. The term "pure economic loss" is a term of art that does not refer to *__all__* economic loss, but only economic loss that would be recoverable as damages in a normal contract suit. *Id.* at 878 (citing *Calloway v. City of Reno*, 116 Nev. 250, 257, 993 P.2d 1259, 1263 (2000).

The opinion was particularly on point when Judge Fletcher stated:

> Based on our reading of the Nevada cases, Nevada's economic loss doctrine is generally consistent with the principles discernible in the case law of other jurisdictions. Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability. Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract. But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007)

The Nevada Supreme Court adopted Judge Fletcher's opinion in the recent case of *Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012). The Court there also stated:

> The economic loss doctrine is a rule of judicial creation that, broadly speaking, "'marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others.'" *Terracon Consultants v. Mandalay Resort,* 125 Nev. 66, 72–73, 206 P.3d 81, 86 (2009) (alteration in original) (quoting *Calloway v. City of Reno,* 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000), *overruled on other grounds by Olson v. Richard,* 120 Nev. 240, 241–44, 89 P.3d 31, 31–33 (2004)). Consistent with this purpose, the doctrine primarily functions to bar the recovery of purely monetary losses in certain products liability and unintentional tort actions. *Id.* at 73, 206 P.3d at 86. *Id.*

Additionally, the Nevada Supreme Court has stated that the purpose of the economic loss doctrine from a policy standpoint was to shield defendants from unlimited liability for all of the

economic consequences of a negligent act and keep the risk for liability reasonably calculable. *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 69, 206 P.3d 81, 83 (2009). The purpose of the economic loss doctrine, therefore, is not to preclude recovery for economic losses; it is to ensure that the risk is easily calculable for the Defendant.  In a products liability case, a manufacturer does not necessarily know what the product will be used for by the purchaser, and if the product is defective, the manufacturer does not have any way of knowing what he could be liable for – those losses are too speculative.  Here, the liability from Defendants' negligent training and supervision is reasonably calculable.  Plaintiff's losses would be directly related to her compensation, which was a fixed amount, known by the Defendants.  The policy behind the economic loss doctrine therefore would not apply in this case.

Additionally, after a review of the relevant rulings, it is at the very least clear that the economic loss doctrine does not bar all tort claims that are based in economic loss.  Even at the most strict interpretation, where a defendant had a duty imposed in law and an intentional breach of that duty caused purely monetary harm, the plaintiff can recover for economic damages.

Here, Defendants had a duty imposed by law to provide a workplace free from discrimination and harassment.  Defendants knowingly and intentionally breached this duty when they chose not to correct their employees' behavior, and knew that their failure to correct the behavior would result in further discrimination and harassment against the Plaintiff.  Defendants' negligence was no mere accident or oversight; there was a conscious choice not to supervise the employee.

Therefore, the economic loss doctrine does not apply to Plaintiff's claims.

> **3.**     **Nevada Industrial Insurance Act Does Not Preempt Plaintiff's Negligent Hiring, Training, Supervision Claim.**

Under the NIIA, "[t]he rights and remedies provided [under the NIIA] for an employee on account of an *injury by accident* sustained *arising out of and in the course of the employment* shall be exclusive, except as otherwise provided in those chapters, of all other rights and remedies of the employee . . . at common law or otherwise, on account of such injury.  NRS 616A.020(1). Accordingly, if the NIIA is to preempt Plaintiff's negligent hiring, training, and supervision claim,

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1  Plaintiff's injury must have been sustained "by accident" and it must "arise out of and in the course

2  of employment."     Under NRS 616A.265(1), an injury is defined as "a sudden and tangible

3  happening of a traumatic nature, producing an immediate or prompt result which is established by

4  medical evidence."[2]     Under NRS 616A.030, an accident is defined as "an unexpected or

5  unforeseen event happening suddenly or violently with or without human fault, and producing at

6  the time objective symptoms of injury."  As a result, to qualify as an accident, "the claimant must

7  show the following three elements:   (1) an unexpected or unforeseen event; (2) happening

8  suddenly and violently; and (3) producing at the time, or within a reasonable time, objective

9  symptoms of injury.  *Bullock v. Pinnacle Risk Management,* 113 Nev. 1385, 1389, 951 P.2d 1036,

10  1039 (1997).

11         Here, the NIIA does not apply because Plaintiff does not allege "accidental" injuries that

12  were caused by a sudden and violent unforeseen event that produced immediate objective

13  symptoms.  *See* Complaint, *generally*, ECF No. 1-1.  Instead, Plaintiff alleges that her injuries

14  resulted from stress induced by escalating harassment during the course of years of employment

15  and lost wages as a result of her constructive discharge.  *See* Complaint ¶¶ 35, 36, 115, 116, ECF

16  No. 1-1.  In their Motion to Dismiss, Defendants even acknowledge that the NIIA does not apply

17  to Plaintiff's type of injury, as Defendants stated "Lienau makes no allegations of physical harm,

18  seemingly in an effort to avoid implicating the NIIA.  Defendants' Motion to Dismiss, p. 14, lines

19  7-9, ECF No. 9.  However, this simply causes the claim to be barred by the economic loss

20  doctrine."  *See* Defendant' Motion to Dismiss, p. 13, ECF No. 9.  Defendants' correctly

21  acknowledge that the NIIA does not apply to Plaintiff's alleged injury, but, again, Defendants are

22  mistaken in their analysis that the economic loss doctrine applies to Plaintiff's claims.

23  Nonetheless, the NIIA does not preempt Plaintiff's claim.

24         Additionally, NRS 616C.180(3) provides that an injury caused by stress is deemed to

25  arise out of and in the course of employment only if "(a) [t]he employee has a mental injury caused

26

27  [2] For additional support, please see *Wilson v. Greater Las Vegas Ass'n of Realtors*, 2015 WL 1014365, at
*2–3 (D. Nev. Mar. 9, 2015).  In *Wilson*, District Judge Andrew Gordon found that Plaintiff's negligent
28  retention and supervision claim is not preempted by the NIIA because Plaintiff alleged undue stress and ill
health, and not an injury that is or could be "established by medical evidence."

by extreme stress in time of danger; (b) [t]he primary cause of the injury was an event that arose out of and during the course of his or her employment; and (c) [t]he stress was not caused by his or her layoff, the termination of his or her employment or any disciplinary action taken against him or her."[3]   Even if the requirements of NRS 616C.180(3) are met, NRS 616C.180(2) excludes from "any ailment or disorder caused by any gradual mental stimulus" from the definition of any injury "arising out of and in the course of employment."   In *McGrath v. State Dep't of Pub. Safety*, the Nevada Supreme Court held that an injury caused by an accumulation of stress over a prolonged period of time is not compensable under the NIIA.   123 Nev. 120, 159 P.3d 239 (2007).   In *McGrath*, the claimant alleged that she suffered stress-related mental and physical injuries due to harassment by coworkers and superior officers.   The *McGrath* Court ultimately found that the claimant's injury was not compensable under the NIA pursuant to NRS 116C.180 because the claimant could not identify a "discrete, traumatic event that caused the stress-related injury." *Id*.

Here, Plaintiff is alleging that Defendants' failure to properly supervise, train, and hire appropriate personnel over a prolonged period of time resulted in stress-related injuries including but not limited to severe emotional distress, mental and emotional harm, anguish, insecurity, damage to self-esteem and self-worth, shame, and humiliation, which ultimately led to her constructive discharge, or termination or disciplinary action.   Complaint ¶ 116, ECF No. 1-1. Thus, Plaintiff's injuries were caused by a "gradual mental stimulus" and not an identifiable and traumatic occurrence. As a result, pursuant to NRS 616C.180, Plaintiff's injury is not an injury by accident and did not "arise out of an in the course of employment."   Moreover, Plaintiff endured stress that resulted from her termination, or constructive discharge, which renders NRS 616C.180(3) inapplicable, regardless.   Therefore, Plaintiff's injury is not compensable under the NIIA, and the rights and remedies provided in the NIIA are not exclusive.

### 4.    Defendants' Have Erroneously Relied on NRS 613.

Defendants reference NRS 613.330 as providing an exclusive remedy, but only to the

---

[3]  Please see *Wilson*, 2015 WL 1014365, at *2–3 (D. Nev. Mar. 9, 2015), where Judge Gordon found that the NIIA did not apply because Plaintiff's stress was caused by the employee's layoff, termination, or "any disciplinary action taken against him or her."

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

extent that it is the exclusive remedy for tort-based claims "premised on discrimination in employment." NRS 613.330 is not the exclusive remedy for tort-based claims grounded on negligence and harassment. For instance, a study of NRS 613.330 will reveal that NRS 613.330 does not contain even one mention of any rendition of the words "harass" or "negligence." If a statute's language is unambiguous, its plain language controls except in rare and exceptional circumstances. *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991). If the Nevada Legislature intended for NRS 613.330 to be the exclusive remedy for tort-based claims premised on negligence and harassment, the language of the statute would reflect as much.

Furthermore, Nevada courts have made clear that there is no blanket preemption of tort-based clams by NRS 613.30. For example, in *Painter v. Atwood*, Supp. 2d 962, 956 (D. Nev. 2012), the court reiterated the following:

> To the extent that the argument is the claims are really based on sexual harassment, this court has already held that tort claims based on sexual harassment are not preempted by NRS chapter 613. *Burns v. Mayer,* 175 F.Supp.2d 1259, 1267 (D.Nev.2001) ("Most courts, including those of Nevada's sister states of California and Arizona, permit both a sexual harassment claim under state anti-discrimination laws and an emotional distress claim under common law.") (internal citations omitted). Further this court clearly stated that it believed "that, if presented with the issue, the Nevada Supreme Court would side with the California and Arizona high courts and find that Nevada's anti-discrimination law also does not preempt common law tort claims." *Id.* at 1267–68.

To support their preemption argument, Defendants rely on *Richardson v. HRHH Gaming Senior Mezz, LLC*, 2016 WL 3545749 (D. Nev. June 28, 2016), which cites *Jackson v. Universal Health Servs., Inc.*, 2014 WL 4635873 (D. Nev. Sept. 15, 2014), *Sands Regent v. Valgardson*, 105 Nev. 436, 777 P.2d 898 (1989), and *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206 (1991). However, the holdings that Defendants rely on are not as broad as Defendants represent them to be, as nothing in those cases suggests that NRS 613.330 preempts a tort-based claim premised on a factual basis separate from the factual basis used to support a discrimination claim.[4] *Richardson v.*

---

[4] *Valgardson* and *D'Angelo* did not hold that plaintiffs cannot sue for personal torts when the underlying facts also give rise to employment discrimination. Instead, *D'Angelo* and *Valgardson* only reiterated that Nevada law does not recognize a tort claim for public policy wrongful discharge based on discrimination

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777   FAX: (702) 259-7704

*HRHH Gaming Senior Mezz, LLC*, 2016 WL 3545749 at *5 ("Plaintiff's claim for negligent hiring, training, and supervision is based on the same alleged illegal employment practices underlying his discrimination claims."); *Jackson v. Universal Health Servs., Inc.*, 2014 WL 4635873, at *4. ("Both Plaintiff's claims for intentional infliction of emotional distress and her claim for negligent training and supervision are based on the same alleged illegal employment practices underlying her discrimination claims.").   Moreover, in *Levy v. Mandalay Corp*, 2015 WL 3629633, at *3–4 (D. Nev. June 10, 2015), the court acknowledged that the Plaintiff could bring forth a negligent hiring, training, and supervision claim if the Plaintiff could allege a basis other than discrimination. ("Plaintiff has not alleged any factual basis to support his negligent hiring, supervision, and training claim separate from the allegations used to support his religious discrimination claims.  At this time, however, it is unclear whether Plaintiff could amend his Complaint to allege a basis . . . that is not precluded by statute. Therefore, the Court will . . . allow Plaintiff the opportunity to sufficiently plead alternative grounds").

Here, NRS 613.330 should not preclude Plaintiff's negligent hiring, training, and supervision claim because Plaintiff's claim is primarily based on harassment and negligence, not discrimination.  In sum, Plaintiff's negligent hiring, training, and supervision claim is based on Plaintiff complaining to Defendants about Pajak's harassment against Plaintiff, Defendants' failure to correct this problem despite knowing about the harassment, and Plaintiff's constructive discharge as a result of Pajak's continued harassment.  A cursory search of Plaintiff's Complaint, including its factual allegations, will verify that this claim is not premised on discrimination, but rather it is premised on harassment and negligence.  *See* Complaint, *generally*, ECF No. 1-1.  As a result, NRS 613.330 does not apply, and this Court should allow Plaintiff's claim to proceed.

GABROY LAW OFFICES
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777   FAX: (702) 259-7704

because Nevada's anti-discrimination statutes already provide a remedy.  *D'Angelo*, 107 Nev. 819 P.2d at n.10; *Valgardson*, 105 Nev. 4365, at 439–440.

**V.      CONCLUSION**

Defendants have not shown, to the required certainty, that Plaintiff is entitled to no relief under any set of facts that could be proved in support of her claim. Accordingly, Plaintiff respectfully requests Defendants' Motion to Dismiss be denied.

Dated this  25th   day of August 2016.

By        GABROY LAW OFFICES
          ____/s/ Christian Gabroy_____
          Christian Gabroy (#8805)
          The District at Green Valley Ranch
          170 South Green Valley Parkway,     Suite 280
          Henderson, Nevada 89012
          Tel     (702) 259-7777
          Fax     (702) 259-7704
          Christian@gabroy.com

## CERTIFICATE OF SERVICE

I, Christian Gabroy on the __25__ day of August 2016, served through the Electronic Case Filing system of the United States District Court, District of Nevada, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** addressed to:

Dora V. Lane, Esq.
Nevada Bar No. 8424
dlane@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART, LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
(702) 669-4600
(702 669-4650 – fax
*Attorneys for Defendants*

By        GABROY LAW OFFICES

          _____/s/_____
          GABROY LAW OFFICES
          Christian Gabroy (#8805)
          The District at Green Valley Ranch
          170 South Green Valley Parkway,
          Suite     280
          Henderson, Nevada 89012

Tel      (702) 259-7777
Fax      (702) 259-7704
Christian@gabroy.com
*Attorney for Plaintiff*

**GABROY LAW OFFICES**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704