Dora V. Lane, Esq.
Nevada Bar No. 8424
dlane@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
(702) 669-4600
(702) 669-4650 – fax
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARIA LIENAU, Individually, <br><br>             Plaintiffs, <br><br> v. <br><br> NEVADA GAMING PARTNERS, LLC, a domestic limited-liability company; NEVADA GAMING PARTNERS MANAGEMENT, LLC, a domestic limited-liability company; NEVADA GAMING PARTNERS MANAGEMENT II, LLC, a domestic limited-liability company; MANAGED BUSINESS SERVICES, INC., a domestic corporation; EMPLOYEE(S)/AGENT(S) DOES 1-10; and ROE CORPORATIONS 11-20, inclusive, <br>             Defendants. | CASE NO.: 2:16-cv-01818-RFB-NJK <br><br> **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |

Defendants Nevada Gaming Partners, LLC ("Nevada Gaming"), Nevada Gaming Partners Management, LLC ("NGPM"), Nevada Gaming Partners Management II, LLC ("NGPM II"), and Managed Business Services, Inc. ("Managed Business") (collectively, "Defendants"), by and through their counsel of record, Holland & Hart LLP, submit this reply in support of their Motion to Dismiss Plaintiff Maria Lienau's ("Lienau") Complaint.

This reply is made based on the attached Memorandum of Points and Authorities, the Complaint on file in this action, and any oral argument this Court may allow.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **LEGAL ARGUMENT**

    A.   **Lienau Failed to Exhaust Administrative Remedies for Retaliation**

To bring a Title VII claim in court, a Plaintiff must first have exhausted her administrative remedies. For the Court to consider Lienau's retaliation claim, "that claim must either be 'within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations' [in her charge] or be 'like or reasonably related to the allegations made before the EEOC.'" *Ulloa v. Potter*, 442 Fed.Appx. 334, *1 (9th Cir. July 14, 2011) quoting *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (internal quotation omitted); *see also B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1100 (9th Cir. 2002). "A plaintiff's claims are reasonably related to allegations in the charge 'to the extent that those claims are consistent with the plaintiff's original theory of the case,' as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful." *Duncan v. Rio Suite Hotel & Casino*, 2012 WL 5818125, at *5 (D. Nev. Nov. 15, 2012) (quoting *B.K.B.*, 276 F.3d at 1100).

"'The crucial element of a charge of discrimination is the factual statement contained therein.'" *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B.*, 276 F.3d at 1100). Lienau's relevant factual statements in the Charge (as claimed in the Opposition) are: 1) that she "was subjected to verbal sexual harassment by Ron Pajak, Supervisor. Although I repeatedly asked him to stop, he continued to engage in this behavior."; 2) she "complained to John Attey [*sic*, Jon Athey], Owner, about Mr. Pajak's conduct."; 3) she "was constructively discharged … due to Respondent's **lack of action** to address my complaint and Mr. Pajak's conduct."; and 4) she "was discriminated against **due to my sex (female)**, in violation of Title VII …." Ecf. No. 1, Exhibit A (the "Complaint"), Exhibit II (emphasis added). These factual statements do not mention retaliation or provide *any* indication that Lienau was claiming retaliation to the EEOC or that it should investigate possible retaliation. *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of

Page **1** of **13**

wrong to support a subsequent civil suit for another."). In fact, Lienau told the EEOC that after she complained to John Athey, Nevada Gaming took **no action, positive or negative**. Compl., Exhibit II. Failing to take action to alleviate an alleged problem cannot logically constitute retaliation. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."). Rather, the "crucial element[s]" of her charge (the facts), show that Lienau's harassment claim to the EEOC is not reasonably like the retaliation claim she now asserts, and no investigation of retaliation would grow out of these allegations. *See Handte v. Hosmer*, 327 Fed.Appx. 1, 5, 2008 WL 4946334 (9th Cir. 2008) (affirming summary judgment on sex discrimination claim in favor of employer where plaintiff did not mark appropriate box and discrimination description did not suggest gender discrimination); *Gannon v. Potter*, 298 Fed.Appx. 623, 624, 2008 WL 4817116, *1 (9th Cir. 2008) (affirming summary judgment where plaintiff only alleged race and gender discrimination but not retaliation).[1] Lienau is simply trying to create a retaliation claim where none previously existed. The Ninth Circuit does not permit this, and Lienau's retaliation claim should be dismissed.

### B. Lienau Lacks a Legally Cognizable Conversion Claim

Lienau cites to *Sims v. AT&T Mobility* for the proposition that her conversion claim should stand, but fails to acknowledge that *Sims* dismissed the conversion claim. 955 F. Supp. 2d 1110, 1120 (E.D. Cal. 2013). Specifically, while *Sims* held that conversion claims for unpaid wages were not categorically barred in California, such claims needed to be sufficiently pleaded: "The problem with Plaintiff's position is that there is no indication in the complaint that the wages sought

---

[1] Citing *Kauffman v. Sidereal Corp.*, 695 F.2d 343 (9th Cir. 1982), Lienau claims that "As to causation, a plaintiff is only required to show by a preponderance of evidence that engaging in the protected activity was but one of the reasons for the adverse employment action" and alleged retaliation. Opp. at 5:16-18. **This is an affirmative misstatement of governing law**. In *University of Texas Southwest Medical Center v. Nassar*, the United States Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)." 133 S. Ct. 2517, 2533 (2013).

constitute an identifiable sum or how such a sum can be readily ascertained. An allegation to that effect is a necessary element of a properly pled conversion claim." *Id.* Thus, the plaintiff's conversion claim failed and was dismissed. *Id.* Other California courts which have held a conversion claim theoretically viable in this area following *Sims* have followed this aspect of the case as well, generally dismissing the claims because the plaintiffs cannot identify the sum allegedly converted. *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, 2015 WL 5007815, at *9 (S.D. Cal. Aug. 20, 2015) (dismissing conversion claim, stating: "There are no allegations in the Complaint that the wages sought constitute an identifiable sum or how such a sum can be readily ascertained. … Plaintiffs' conversion claim is therefore improperly plead.").

Here, Lienau's Complaint does not allege a specific and identifiable sum of money converted, nor can it. Instead, Lienau alleges that she would regularly work off the clock (i.e., with no record of her supposedly unpaid work) without pay. Just as in *Alvarenga v. Carlson Wagonlit Travel, Inc.*, these allegations affirmatively demonstrate that it will be **impossible** for Lienau to allege a *specific sum of money* converted. 2016 WL 466132, at *5 (E.D. Cal. Feb. 8, 2016) ( "It is not evident from the pleadings that any specific sum of money owed is identifiable in this case. In fact, because Plaintiff was classified as an exempt employee, it is quite likely that records of the hours that she worked were not kept, **making any definite calculation of an amount converted to be impossible**.") (emphasis added). Without allegations identifying a specific or ascertainable sum of money, even the cases supporting Lienau's position that a conversion claim is theoretically viable support dismissal of her specific claim. *See, e.g.*, *Sims*, 955 F. Supp. 2d at 1120.

Furthermore, no conversion claim for unpaid minimum wage or overtime should stand for the reasons set forth in Defendants' Motion and described in *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F.Supp.2d 1091, 1102-15 (D. Nev. 2007) (dismissing conversion claims based on failure to pay wages under the laws of Delaware, Utah, Montana, Alaska, Hawaii, Maine, Wyoming, and Nebraska); *see also Pelayo v. Platinum Limousine Services, Inc.*, 2015 WL 5768949, *6-9 (D. Haw. Sept. 30, 2015) (analyzing and ultimately following *In re Wal-Mart* and dismissing conversion claim based on plaintiffs' failure to pay wages and expenses claims). California is an outlier in even potentially recognizing a conversion claim for unpaid wages, and the

analysis on which *Sims* bases this conclusion is flawed. In *Sims*, the court held that because employees could bring a common law claim for wages under contract theories or in quantum meruit for the value of services rendered, the California Labor Code was not the exclusive remedy for minimum wage and overtime claims. *Sims*, 955 F. Supp. 2d at 1116. This analysis is flawed because conversion is a tort claim wholly distinct from contract or quasi contract (quantum meruit) claims. While contract and quasi contract are common law doctrines, Defendants are unaware of any minimum wage or overtime doctrines/claims existing at common law or any torts for unpaid minimum wages/overtime at common law. Here, Lienau does not bring a contract/quasi-contract claim, but a claim for conversion of minimum wage and overtime—both of which are creations of statute or the Nevada Constitution. As these claims did not exist at common law, the *Sims* analysis is incorrect and the Court should adopt the analysis of Judge Pro in *In re Wal-Mart Wage & Hour Emp't Practices Litig.* analyzing the laws of states similar to Nevada and dismissing the conversion claims.

### C. Lienau's Negligent Hiring, Training, and Supervision Claim Fails

#### 1. Lienau Alleged No Facts Supporting a Negligence Claim

In her Opposition, Lienau admits that it is "whether antecedent circumstances would 'give[] the employer reason to believe'" an employee might be dangerous that determines if a negligent hiring, training, or supervision claim may lie. Opp. 13:27-14:2 (quoting *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996)). Because the "antecedent circumstances" are what matter, *i.e.* knowledge prior to the harm at issue, at a minimum a plaintiff must set forth facts regarding a defendant's practices in these regards to survive a motion to dismiss. *See Lambey v. Nev. Dept. of Health & Human Svcs.*, 2008 WL 2704191, *3 (D. Nev. July 3, 2008) (holding that "a cursory legal conclusion that Defendant was negligent in hiring" was insufficient to survive dismissal); *see also Lucey v. Nevada ex rel., Bd. of Regents of Nev. Sys. of Higher Educ.*, 2009 WL 971667, *7 (D. Nev. Apr. 9, 2009), *aff'd*, 380 Fed. Appx. 608 (9th Cir. 2010) (dismissing claim because Plaintiff made no factual allegations beyond the broad assertion that Defendants hired employees with a "propensity towards committing unlawful acts" and "brought forth no evidence to show" that Defendant negligently hired its employees). Here, Lienau alleges no facts about any Defendants' hiring, training, or other

practices, either in the Complaint or her Opposition. Rather, Lienau focuses solely on the time period surrounding when she allegedly complained to Jon Athey. Opp. at 14:6-27, quoting Compl., ¶¶ 35-36, 39, 115-116. Thus, because Plaintiff provides no factual allegations regarding Defendants' hiring, training practices, or other practices, rather than mere legal conclusions, her claim should be dismissed. *Twombly*, 550 U.S. at 570.

### 2. The Economic Loss Doctrine Bars Lienau's Claim

Plaintiff's reliance on *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007) is unavailing. In *Giles*, the court determined that the economic loss doctrine did not bar intentional tort claims for fraud or conversion. *Id.* at 872-73. Notably, Defendants did not argue that the economic loss doctrine barred the conversion claim, and no other intentional torts are alleged. *Giles* recognized, however, that "Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability." *Id.* at 879. Thus, the *Giles* statement that the economic loss doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract **and** where the **defendant's intentional breach of that duty** caused purely monetary harm to the plaintiff" provides no support for Lienau's position. *Id.* (emphasis added); *see also Davis v. Beling*, 278 P.3d 501, 514-15 (Nev. 2012) (explaining that the economic loss doctrine did not bar *intentional* torts citing *Giles*). Here, while Plaintiff alleges a duty imposed by law, she does not allege an "intentional breach of that duty," but a negligent one. Because Plaintiff's claim is negligence-based, and she admits she suffered no physical harm, her claim is barred by the economic loss doctrine. *Giles*, 494 F.3d at 879 ("Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability.")

### 3. NRS 613.330 Bars Lienau's Negligence Claim

NRS 613.330 "'provides the exclusive remedy' under Nevada law 'for tort claims premised on illegal employment practices.'" *Richardson v. HRHH Gaming Senior Mezz, LLC*, 2016 WL 3545749, at *5 (D. Nev. June 28, 2016) (quoting *Jackson v. Universal Health Servs., Inc.*, 2014 WL 4635873, at *3 (D. Nev. Sept. 15, 2014) and citing *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the Legislature has addressed the gravity of violating Nevada's public policy against

age discrimination by defining the extent of the remedy available to parties injured by such discrimination.") and *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (Nev. 1991) . While not disputing that NRS 613.330 bars negligence claims based on discrimination, Plaintiff contends that NRS 613.330 does not provide "the exclusive remedy for tort based claims based on negligence and harassment." This is a distinction without a difference. Unlike in *Painter v. Atwood*, 912 F.Supp.2d 962 (D. Nev. 2012), Lienau does not allege an intentional tort. Further, her negligence claim is based entirely on the facts underlying her harassment/discrimination claim. As Lienau's counsel well knows, "[s]exual harassment is a form of sex discrimination …." *Tanner v. Prima Donna Resorts, Inc.*, 919 F. Supp. 351, 353 (D. Nev. 1996) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)). Thus, Lienau presents no facts supporting her negligence claim separate from those supporting her discrimination and retaliation claims. As such, Lienau's negligence claim should be dismissed as barred by NRS 613.330. *Levy v. Mandalay Corp*, 2015 WL 3629633, at *3–4 (D. Nev. June 10, 2015) (dismissing claim because "Plaintiff has not alleged any factual basis to support his negligent hiring, supervision, and training claim separate from the allegations used to support his religious discrimination claims.").

### D. Plaintiff Failed to Assert any Allegations in Her Complaint Giving Rise to Plausible Claims against NGPM, NGPM II, or Managed Business

Lienau impermissibly seeks to go beyond the Complaint to support claims against NGPM, NGPM II, and Managed Business. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (explaining that courts may not look to facts stated in an opposition to deny a motion to dismiss). The simple fact is that Lienau alleged no substantive facts giving rise to liability against NGPM, NGPM II, or Managed Business, and presented no factual allegations at all against NGPM or NGPM II. Thus, they should be dismissed.

#### 1. Plaintiff Failed to Allege any Facts Giving Rise to Claims against NGPM or NGPM II

Lienau argues that "Plainitiff's failure to name NGPM, NGPM II, and Managed Business is not dispositive because these defendants should have anticipated that they would have been named as defendants." Opp. at 7:9-10. Lienau further tries to argue that "a claim against NGPM and

NGPM II does not hinge on whether Defendants were in existence at the time of injury, but rather it depends on whether NGPM and NGPM II are considered Plaintiff's 'employers.'" Opp. at 7:23-8:1. Lienau misses the point: regardless of these arguments, she failed to allege fact in her Complaint against NGPM or NGPM II potentially giving rise to liability. Further, the fact that they did not exist until long after she ceased employment with Nevada Gaming demonstrates that amendment would be futile because there can be no facts for her to allege against these entities. *See* Mot., Exhibits 1 and 2.  Without factual allegations in the Complaint supporting joint employment (or any facts at all as in this case) any analysis of whether these entities might have anticipated being sued or whether the EEOC could have inferred they violated Title VII are meritless. ***As non-existent entities at that time, they could not have employed Lienau, whether jointly or otherwise.***

Lienau continues in this same vein by arguing that the fact-intensive "integrated-employer test" might eventually show that these entities were an integrated employer with Nevada Gaming. This argument again misses the mark because the relevant inquiry is whether these entities were an integrated employer *at the time when the alleged events took place.* As the entities were not in existence at that time, they could not possibly have been an integrated employer. And, such argument is unsupported by any facts alleged in the Complaint—which is the only question of import on a motion to dismiss.

Finally, Lienau argues that NGPM and MGPM II may be liable to her under the FLSA as a single employer with Nevada Gaming. This too is the wrong issue. First, the test Lienau discusses from *Chao v. A-One Medical Services, Inc.* is to determine FLSA coverage, *i.e.* whether a company is covered by the FLSA, not joint employment. 346 F.3d 908, 914-916 (9th Cir. 2003). (*Chao* later addresses joint employment, showing how the test for coverage is similar but different from joint employment. *See Chao*, 356 F.3d at 917-18.) Thus, Lienau's analysis is inapplicable to the issue before the Court. Second, the actual issue is the same as that addressed above: Lienau asserts no substantive FLSA allegations against NGPM or NGPM II in her Complaint, whether related to joint employment or otherwise, especially showing involvement by these entities in the relevant timeframe. Without such allegations, NGPM or NGPM II should be dismissed from the action.

### 2. Plaintiff Failed to Allege any Facts Giving Rise to Claims against Managed Business

While Lienau claims that Managed Business "had control over Plaintiff" and employed her as defined by statute, she alleges no facts supporting these legal conclusions and thereafter fails to even reference Managed Business. *See generally*, Compl. Rather, all factual allegations in the Complaint are either directed at "Defendants," without differentiation, or to Nevada Gaming. *Id.* Similarly, Plaintiff largely fails to discuss Managed Business in her Opposition. *See generally*, Opp. Not once in her two page statement of facts does Lienau mention Managed Business or any entity other than Nevada Gaming. *Id.* at 2:5-3:19. Instead, she claims "On … December 21, 2010, Plaintiff began employment with Nevada Gaming Partners, LLC [after which], Plaintiff's supervisor, Ron Pajak ('Pajak'), began to make inappropriate comments to Plaintiff." Opp. at 2:6-8. After first stating the names of the parties in the opening paragraph of her Opposition (pre-memorandum of points and authorities), Lienau does not mention Managed Business until the sixth page of her brief wherein she begins to argue it should not be dismissed. *See generally*, Opp.

Attempting to fix the fact she alleged no facts against Managed Business, Lienau argues: 1) that there was no need to present allegations specifically against Managed Business because she named it an "employer" (a legal conclusion with no factual support) early in her Complaint; and 2) that because there are only four Defendants in this matter, she should be free to make undifferentiated allegations applying to all of them. These arguments fail for the reasons stated in Defendants' Motion, namely that Managed Business was not given notice that any claims may be asserted against it in the Charge and that no allegations were actually made against it in the Complaint providing adequate notice under Rule 8. Plaintiff's claim that undifferentiated pleading in this circumstance is unavailing. The one case cited in support explained that the allegations were clear regarding the allegations against individual parties. *See Parker v. Dean Transp. Inc.*, 2013 WL 7083269, at *13 (C.D. Cal. Oct. 15, 2013). The simple fact is that there are no allegations in the Complaint that Managed Business can understand to have been pleaded as against it. *See generally*, Compl. (never claiming Managed Business specifically did anything in regards to Lienau). Rather, Lienau alleged that Nevada Gaming hired her and that one of Nevada Gaming's employees

harassed her; that she complained to an owner of Nevada Gaming; and quit her employment with Nevada Gaming. *See generally*, *id.* She does not allege any **facts** against Managed Business or how it is related to Nevada Gaming. *See generally*, *id.* As Lienau failed to present any allegations giving rise to plausible claims against Managed Business, it should be dismissed.

### E.  Lienau's State-Law Minimum Wage Claim Is Subject to a Two-Year Statute of Limitations

Without real analysis, Lienau relies on NRS 11.220 and *White Pine Lumber Co. v. City of Reno*, 801 P.2d 1370 (Nev. 1990) for the proposition that a four year statute of limitations applies to Nevada constitutional minimum wage claims. While the Nevada Supreme Court has not addressed this issue (though the question is currently pending before it), Lienau is wrong. The Court should apply NRS 608.260's two-year limitations period to the state minimum wage claims. (Defendants do not currently contend a two-year statute of limitations applies to the state overtime claim.)

#### 1.  NRS 608.260 Plainly Applies to Lienau's Statutory Minimum Wage Claim

Lienau incorrectly states that her claims do not fall under NRS 608.260. In addition to her constitutional claim, Lienau's fourth cause of action is labeled "… Minimum Wage NRS 608.050 *et seq.*" Compl., at 13:5-7. This minimum wage claim is, thus, based on NRS 608.260. *See* NRS 608.260. As such, it must be limited to its two-year statutory period.

#### 2.  The Minimum Wage Amendment Largely Embraces NRS Chapter 608's Existing Scheme

In interpreting the constitution, courts seek "to determine the public understanding of [the] legal text" leading up to and "in the period after its enactment or ratification." *Strickland v. Waymire*, 235 P.3d 605, 608 (Nev. 2010) (citations omitted). The text itself is the starting point of this analysis and "must … not be read in a way that would render words or phrases superfluous[.]" *Blackburn v. State*, 294 P.3d 422, 426 (Nev. 2013). Because the "Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary, as distinguished from technical meaning." *Id.* (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). If a provision's "language is clear on its face," the analysis is at an end. *Strickland*, 235

P.3d at 608 (internal quotation omitted), 611 n.2 ("Rules of statutory construction apply to constitutional interpretation."). If, however, the language requires further interpretation, the Court looks to "history, public policy, and reason for the provision." *Landreth v. Malik*, 251 P.3d 163, 167 (Nev. 2011) (citation omitted).

The Nevada constitution's Minimum Wage Amendment (the "MWA") contains a private right of action, but does not contain an independent statute of limitations. However, it is incorrect to believe the MWA is entirely silent on this matter. Article 15, Section 16(B) provides, in part: "An employee . . . may bring an action . . . and shall be entitled to ***all remedies available under the law or in equity appropriate*** to remedy any violation of this section …." (Emphasis added.) Thus, statutes of limitations and the time-period in which a party may recover are issues covered by the MWA by reference and incorporation. Accordingly, the critical issue is determining what voters meant when they limited claims under the MWA to "available" and "appropriate" remedies under the law or in equity.

The meaning of the words "available" and "appropriate" are determined by their "normal and ordinary" meaning. *Strickland*, 235 P.3d at 608. The meaning can be further interpreted in light of the fact that the MWA amends the state's wage laws. *See, e.g.*, *State v. Fallon*, 685 P.2d 1385, 1389-91 (Nev. 1984) (provisions in a common statutory scheme should be interpreted harmoniously). Looking to its normal and common meaning, "available," means "suitable or ready for use," "readily obtainable," etc. *See* http://www.dictionary.com, accessed August 31, 2016; *see also* Merriam-Webster's Collegiate Dictionary (11th ed. 2007). "Appropriate", in turn, means "suitable or fitting for a particular purpose, person, occasion, etc." *See* http://www.dictionary.com, accessed August 31, 2016; *see also* Merriam-Webster's Collegiate Dictionary (11th ed. 2007). Here, the remedies that were suitable and ready for use at the time of the MWA's passage are NRS Chapter 608's existing provisions that do not expressly conflict with the MWA. These include, among other provisions: 1) NRS 608.115's requirement that employers maintain wage records for two years; and 2) NRS 608.260's two-year statute of limitations period for minimum wage claims that mirrors the statutory recordkeeping requirement. Further, the two-year statute of limitations is the appropriate time period because it fits with the purpose of the statutory requirement that

employers maintain wage records for a period of two years. Any statute of limitations beyond two years cannot reasonably be considered appropriate given this statutory framework and the limited requirement for employers to maintain wage records for only two years. Harmonizing these provisions is the only way to give effect to Article 15, Section 16's language concerning "all remedies available" and "appropriate." *See Blackburn*, 294 P.3d at 426. Thus, the Court should limit the constitutional minimum wage claim to a two-year statutory period pending the Nevada Supreme Court's decision on this issue.

### 3. Minimum Wage Claims Are Properly Limited to Two Years

Lienau affirmatively misstates the holdings and analysis in *White Pine Lumber Co. v. City of Reno*, 801 P.2d 1370, 1371 (Nev. 1990) and *Alper v. Clark County*, 571 P.2d 810 (1977). Lienau argues that the *White Pine Lumber* "Court held that a claim under the Nevada Constitution against a municipality for inverse condemnation would have, absent other considerations, been subject to the four year 'catch all' statute of limitations provided for in NRS 11.220." Opp. at 11:14-17. *White Pine Lumber* did no such thing. Rather, in *White Pine Lumber*, the district court applied the four-year catch all provision and was overturned. *White Pine Lumber*, 571 P.2d at 1371. The Nevada Supreme Court reversed, holding that the general statute of limitations for adverse possession, the most analogous statutory claim, applied to constitutional takings claims. *Id.* The Court **never** stated that the catch all limitations would have applied but for some other considerations. *See generally*, *id.* Further, Lienau misstates the *Alper* holding, which *White Pine Lumber* discussed in footnote 3. Specifically, *White Pine Lumber* states in regards to *Alper*: "Because Clark County had affirmatively misled plaintiff into not filing suit, however, **we held that the county was estopped from raising a statute of limitations defense**. *Id.* Therefore, ***we did not decide, nor even hint, in Alper that either of the statutes offered by the county was applicable***." *Id.* at 1372 n.3. Thus, Lienau's suggestion that *Alper* agreed with the application of a four-year statute of limitations by stating the court "recited, without dispute, the logic of applying the four year NRS 11.220 statute of limitations" is, at best, deceptive. In truth, *Alper* only recited the defendant's argument for application of *either of two different statutory periods*, rejecting both arguments and finding that defendant was barred from asserting any statute of limitations defense. *Alper*, 571 P.2d at 813.

Notwithstanding Lienau's mis-citation to *White Pine Lumber*, it remains relevant. What *White Pine Lumber* actually shows is that the Nevada Supreme Court has identified and applied the limitations period applicable to a statutory claim to a similar constitutional claim. Specifically, the *White Pine Lumber* court held that the statute of limitations for Nevada's civil adverse possession statute also applied to wrongful takings claims. *Id.* As stated above, the *White Pine Lumber* court specifically rejected the use of the state's "catch all" statute of limitations because it was inconsistent with the nature of the claims before the court. This approach is consistent with federal law and is how this court should proceed here. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 279-80 (1985) (holding the appropriate statute of limitations for a constitutional tort is the most analogous statute of limitations). Thus, this Court should apply the statute of limitations set forth in NRS 608.260, the most analogous statute of limitations, as it directly addresses minimum wage claims.

## II.    CONCLUSION

For the forgoing reasons, Lienau's retaliation, conversion, and negligence claims should be dismissed; NGPM, NGPM II, and Managed Business dismissed entirely; and Lienau's wage claims limited to the proper limitations periods.

DATED this 7th day of September, 2016.

                                        HOLLAND & HART LLP

                                      By   /s/ R. Calder Huntington
                                          Dora V. Lane, Esq.
                                          Nevada Bar No. 8424
                                          R. Calder Huntington, Esq.
                                          Nevada Bar No. 11996
                                          9555 Hillwood Drive, 2nd Floor
                                          Las Vegas, Nevada 89134
                                          *Attorneys for Defendants*

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 669-4600 ♦ Fax: (702) 669-4650

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 7th day of September, 2016, I served a true and correct copy of the foregoing **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS** by electronic transmission to the parties on electronic file and/or depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Christian Gabroy, Esq.
Oscar Peralta, Esq.
GABROY LAW OFFICES
170 South Green Valley Parkway, Ste 280
Henderson, Nevada 89012
Christian@gabroy.com
Operalta@gabroy.com
*Attorneys for Plaintiffs*

/s/ Marie Twist
An Employee of Holland & Hart LLP

9070529_1

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 669-4600 ♦ Fax: (702) 669-4650